Thank you. Good morning, Your Honors. Jean Gris, USC Immigration Clinic, Pro Bono Counsel for Mr. Orlando Lopez-Aguilar. Mr. Lopez-Aguilar is mestizo. Mestizo is a word used in Guatemala that means mixed race. Mr. Lopez-Aguilar's father is Ladino, or non-Indigenous, and his father is Colombian Ixchil. Mr. Lopez-Aguilar experienced harm because he is mestizo, living in an Indigenous region in Guatemala that is still experiencing the repercussions of genocide by the Guatemalan army, who are predominantly Ladino. Mr. Lopez-Aguilar suffered beatings, including a fractured arm, by Indigenous neighbors and Indigenous gang members until he left Guatemala. During his proceedings, he was detained, unrepresented, and non-English speaking. In his proceedings, the immigration judge failed to inform Mr. Lopez-Aguilar of what he needed to prove in order to establish asylum and withholding. This error was compounded by the immigration judge's misinformation or advisal that he did not have a strong asylum claim and that he should provide country conditions evidence specifically about the treatment of Indigenous people in Guatemala. How do you address the recent decision, Hussein? We have other cases like it, but that's sort of the most recent one on the IJ's obligations. How does that affect this case? Under Hussein, a case can be remanded when the petitioner is prevented from telling significant testimony. So here, the failure to advise coupled with the misinformation regarding the focus on Indigenous people and the additional erroneous translation of mestizo into Indigenous all prevented Mr. Lopez-Aguilar from presenting his testimony regarding the nexus, which was a significant part. Let me ask, how did it prevent him from presenting his testimony? The judge, the IJ, did say to him at some point, tell me what persecution or mistreatment you suffered because you're half Indigenous. And all that he said was, well, I'm short. My stature is short. So I'm trying to figure out how he was prevented from testifying about his claims that he was persecuted because he was mestizo or half Indigenous. Well, so he was mestizo and he said in the very beginning, the reason that he feared returning to Guatemala was because he was harmed because he was mestizo. And it's important to note that Mr. Orlando Lopez-Aguilar was not aware of the mistranslation. So in his mind, he said mestizo, but the judge just focused on Indigenous. Well, that's why I was asking the question. The judge didn't focus solely on Indigenous because he said, first, tell me what persecution or mistreatment you've suffered because you're half Indigenous. The judge was clearly aware of the parentage stuff because he mentioned earlier the mother's heritage and the father's. And Mr. Lopez then said something about being short. The judge then asked a different question, which is, all right, now, what persecution have you had because you're Indigenous? And then he then went into the gang treatment. So I'm trying to figure out why he was prevented from making his argument. Mr. Lopez-Aguilar never said he was persecuted because he was Indigenous. And the judge never used the word mestizo. So, for example, I'll take our vice president. She is the first female vice president. She's the first South Asian vice president. She is the first black vice president. So those are all different things. By just being half Indigenous, the focus was just on being Indigenous. And the judge never said mestizo, although Mr. Lopez-Aguilar first testified he was harmed from being mestizo. Right. But, I mean. Well, Judge Press, go ahead. I'm sorry. My apologies. Were there not enough open-ended questions? I mean, there were some questions that seemed to be geared and used the word Indigenous. But there were a number of other questions that didn't and that would have given him the opportunity to, you know, voice his claim to say what was on his mind. And so, why wasn't that sufficient? Because Mr. Lopez, as far as he knew, he had testified that he was harmed because he was mestizo. He did not know that mestizo was mistranslated into Indigenous. So, if asked, are there any other reasons you fear harm? He's already testified mestizo. The judge has never asked him about that. And further, the judge, who's the asylum expert, who was told him she doesn't think he has a strong case and he should bring documents regarding being Indigenous, and has focused her questions on him being Indigenous, that prevented him. For example, he didn't realize there was a mistake there to correct because he said mestizo. And the judge chose not to follow up and ask him about why were you harmed because you're mestizo. Let me ask the question a slightly different way. Let's assume that the translator translated accurately for a moment. I know it was not an accurate translation. Where in the record is there evidence that your client was persecuted because he was mestizo?  I know that was his claim, but where's the evidence of persecution that has a nexus to his mestizo status? Where would I find that? Well, the beginning, when he says he's harmed for being mestizo. He says he's harmed for being mestizo, but where's the evidence that it occurred because he was mestizo? Well, his testimony, and then also his talking about how the people are Indigenous, how they sent his brother away because of his family. He also says things like, people in my own race, they bother us. And the judge never asks, what do you mean by your own race? What do you mean by us? So he is attempting to describe the conditions and him being mestizo, but the judge is focusing on being Indigenous. And I think it's almost like there's these two total disconnects where when he says own race, he's thinking mestizo because that's what he testified to. And the judge is thinking Indigenous because the judge is focused on Indigenous. There was that mistranslation, but in your hypothetical, it doesn't occur. Can I ask a quick question? One of the dangers that he indicated that if he returned to Guatemala was the gangs. And the reason he identified that he would be targeted by them was because, be harmed by them, is because he wouldn't join the gangs. But yet his claim that the gangs are actually targeting him for racial reasons seems to be inconsistent with them targeting him because he didn't want to join one. Can you help me reconcile that idea? Yes, well, asylum requires that the on account of ground, the protected ground, be one central reason. So there can be more than one reason. And he testifies, and withholding is different, but he testifies that they thought I'd be useful to them. And that is him developing the on account of ground. Why would they be useful? It was because he spoke Spanish in this Indigenous community. But that was never developed in the record. So there can be more than one reason. The protected ground has to be the central reason. And that was just undeveloped here in this testimony, in part because of the limited questioning, you know, framing everything. And then, well, the mistranslation, he did that. The fact that he put in two declarations earlier. The government mentions this and says, essentially, you know, if he wanted to advance this particular claim on, you know, arguing that he was persecuted because he refused, though, he could have put in the two declarations to file the IPA. So, I'm sorry, I had a hard time hearing you, Judge Bress, but I think your question was, he did have the opportunity to say he was Mestizo in his declarations? Correct. And so that is. Indicate that he was persecuted on the ground, that he was Mestizo. Well, that goes back to him not knowing what is required to prove asylum. It's not until actually the end of his hearing, when the judge is telling him why she's denying his claim, that the immigration judge sets forth the fact that you can experience harm, but in order for it to be on asylum, it has to be for these protections. It has to be evidence. The government talks about how there's these advisals, but never at any point does the judge actually tell him what he needs to prove to reach the requirements. The immigration judge says, tell me all the reasons why you're afraid to go to Guatemala without an explanation of what reasons would suffice to establish asylum. The judge says, bring in country conditions, doctors, reports, these kinds of evidence, without saying why those evidence would be relevant or what the evidence needs to establish. So that is why the declaration prior, without understanding what is required for asylum, would not contain those elements. I see I'm running out of time, and I'd like to reserve some. I'll give you a minute for rebuttal at the end. We've extended your time with our questions. Mr. Lutz. Good morning, Your Honors. May it please the court, Alexander Lutz for the government. Your Honors, there's really no question on this record that immigration judge Nelson correctly understood Mr. Lopez's ethnicity as half indigenous on his father's side and half non-indigenous on his mother's side. We know that because she immediately clarified it on the record after the mistranslation Mr. Lopez identified on appeal to the board. And we know that because she said it correctly in her decision at the end of the hearing. And there's really no question on this record that the immigration judge did question Mr. Lopez in a way that would have allowed him to testify that he had been targeted by indigenous people because of the non-indigenous side of his heritage. She asked him, do you believe anyone has ever physically harmed you because of racism or because you're half indigenous? Mr. Lopez argues that that question wasn't sufficient because he had a different understanding of what the word racism meant. According to Mr. Lopez's brief to the board, he thought racism only meant when Latino people target indigenous people, not the other way around. But he had used that same word in the previous sentence. He said it was racism. It was just racism at work that he experienced. And that's when the immigration judge asked him, has anyone physically harmed you because of racism or because you're half indigenous? But even if the court doesn't agree with the government on either of those two points, there was no prejudice in this case because Mr. Lopez was given a fair opportunity to tell the immigration judge that the gang members who targeted him had a motive against his non-indigenous heritage. That was the argument that he set on appeal to the board. He hadn't gotten to tell the immigration judge about. But, for example, when he said that the gangs had targeted him and he described the first incident of that harm, the immigration judge asked him, and I quote, why do you think they wanted to bother you and your friends specifically? And then she followed up. Why did the gang want to target you and your friends? And then she followed up again. Were there any other reasons? If Mr. Lopez believed that he had been targeted by indigenous gang members because of his non-indigenous side of his heritage, he had that opportunity in response to these questions. And he just gave different answers that, in hindsight, didn't establish his eligibility for asylum. He said. I'm sorry to cut you off. Let me ask you about the mistranslation. Sure. Our case, our case law seems to say that if there is a mistranslation, if there's a reasonable possibility that it could have affected the outcome. Don't have to show you don't have to show prejudice with precision. At most, at least this record is somewhat confusing in terms of Mr. Lopez's answers. Why don't why don't we just send it back to make sure that the IJ gets it right? Well, your honor, for a couple of reasons. First of all, while Mr. Lopez in his brief to this court discusses other issues in the record, for example, he says that at about three points, his answers were unclear. Or he points out that for one page of transcript before he started testifying, the video teleconferencing system had an error that was quickly fixed. He points those out in his brief to this court. But to the board, his only argument specifically about how there was an error in his hearing was that in one sentence he had been mistranslated. He made generalized arguments about how the translation was incompetent. But the only specific ground where the translator had failed that he actually identified was one sentence where he said or he was translated saying I'm indigenous since my father's mestizo. And then he later claimed that he would get said was I'm mestizo because my father's indigenous. So I would point out that to the extent Mr. Lopez is arguing about different errors. To the extent he's arguing about different points in the hearing that showed problems with the translation. Either he's trying to demonstrate to this court that the one error he raised to the board actually did exist. But the board agreed with that. So that's not a basis to reverse the board's decision. The Supreme Court has held, you know, that if we're going to reverse the agency, we have to do it on the grounds the agency actually indicated. The agency didn't say there wasn't an error in the translation. So if Mr. Lopez is giving these further examples as additional proof of the one error he showed to the board, he's essentially challenging the board's decision on a ground that wasn't a basis for the board's decision. I think it is challenging the board's decision that the error was harmless by pointing out the record as a whole and therefore arguing that this particular error taken into context of the record as a whole may have prejudiced it. I'm not sure what's wrong with that. Well, I think that's right, Your Honor. But I think that's slightly different from your previous question. The way I look at it, and I think the way the court's precedent and the board look at it, Mr. Lopez first has to identify what the errors were, and then he has to show a realistic way that they could have prejudiced the outcome of his case. And here he gave one error to the board. He said, I was mistranslated when I said I was mestizo, but I was mistranslated as having said I was indigenous. And if we look through the record, as we outlined in our answering brief, we can see that didn't influence the course of proceedings. The immigration judge understood his race, asked him questions that didn't preclude him from talking about his Ladino heritage, and asked a lot of open-ended questions and questions targeted to the motives of the people who target him that should have allowed him to explain exactly the motives that he later suggested on appeal to the board. So that's the one error he raised to the board, and we are all today arguing about whether that was prejudicial. To the extent he's talking about other incidents in the transcript, those are purportedly other errors. The fact that the video teleconferencing system failed for one page, for example, doesn't explain how the mistranslation he raised to the board could have changed the outcome of proceedings. So he's got to identify the error first and then show prejudice, and here he hasn't shown prejudice with respect to the one error he actually exhausted. Now, in his reply brief, Mr. Lopez... Let me ask you a question. It seemed to me that the IJA did not understand that Lopez was of a different race than the gang members themselves. Do you agree with that? And if that's the case, why would that not at least show some potential for prejudice? I would not agree with that, Your Honor, because, first of all, the immigration judge clarified that she correctly understood Mr. Lopez's race. She knew he was half indigenous and not half indigenous, and I think the argument that Your Honor's question goes to is his claim that he raised on appeal to the board that because he grew up in an indigenous area where the gang members were indigenous, it was his non-indigenous heritage that made him stick out and drew their attention. But the immigration judge understood that point, too. She said in her decision he grew up in a small town in Guatemala that is primarily made up of those from the indigenous races, and she understood that he had been bullied in the past. I think she said that at one point, that he had been bullied by indigenous people because he didn't speak their dialect correctly. So the immigration judge understood those predicate facts, and the question of whether they prejudiced the outcome of the case really comes down to, was this hearing fundamentally fair? I think it is important to recall that the standard for due process in removal proceedings is whether his hearing was fundamentally fair. And all of Mr. Lopez's arguments about what the immigration judge said, she said he was indigenous or half indigenous, those all boil down to a claim that this error prejudiced his case because it stopped him from testifying that the gang members targeted him because of his race. But he didn't say that when the immigration judge repeatedly asked him why the gang members had targeted him. Let me ask a question about something specific the judge said in her finding. She said the respondent did not indicate that the gangs targeted him because of his indigenous race, but instead indicated that the gang members themselves were mostly indigenous. So it seems to me she understood his claim as being based on his indigenous race as opposed to his half indigenous race in her decision. She may have asked questions along the way that clarified, but in her decision, she focused on gang violence because of his indigenous race. And that really wasn't his claim, was it? Well, first of all, Your Honor, the claim he raised to the immigration judge was that gang members had targeted him because of how he dressed, because they wanted to recruit him, because his soccer team had won trophies, because of his Spanish language skills. That was the claim he made to the immigration judge. That was the claim the immigration judge adjudicated. And he nowhere challenges the merits of the decision that the immigration judge actually rendered on the record before her. Now, you're right that the immigration judge in her oral decision in a few places says indigenous instead of non-indigenous. But that can't show she misunderstood his race when she correctly stated his race. And that can't show that he didn't have an opportunity to put forward the claims he now urges when she asked questions to which those claims would have been responsive. Rather, as the board said, it just seems that in the oral decision, the immigration judge in a couple of places said indigenous when she could have said half indigenous. And certainly it would have been more precise to say half indigenous at each of those points. But we're not reviewing the immigration judge's decision for precision in its wording. We're looking to see whether the hearing was fundamentally fair. And it was because there were questions asked that should have elicited the precise information he later suggested for the first time on appeal to the board. Your Honor, unless there is. Yeah. Either my colleagues have questions in terms of this. I do not. Thank you. And let's put a couple of minutes up on the board for for Ms. Rice. Thank you, Your Honor. Thank you. The record reveals that the immigration judge uses references to indigenous eight times and reference to half indigenous once. The judge never references mestizo. Mr. Lopez Aguilar stated he was harmed from neighbors and gang members because he was mestizo, but that was mistranslated. The question, have you ever been harmed because you were racism because of racism or being indigenous? Does not provide Mr. Lopez Aguilar the opportunity to talk about being mestizo because indigenous and racism, it's a compound question. It's linked together. And again, he had already testified that he had that he had been harmed because he was mestizo. That was just never followed up by that by the judge. And he was not aware it was mistranslated because he doesn't speak English. What do you how do you how do you deal with the really open ended questions? Like, why did you leave Guatemala? Why did the gangs want to harm you? I'm paraphrasing, but there are a number of questions kind of along those lines that don't use the word indigenous. I think you have to look at the totality. He doesn't know what's required to prove for asylum. The judges told him bring evidence about being indigenous. The judges told him what she thinks of his case, that it's not very strong. And the judge is focusing on the on being indigenous on the erroneous belief that he's indigenous. So I think that then saying that and Mr. Lopez Aguilar believes that the judge heard him say because I'm mestizo. So I think given all of that together, then to say that Mr. Lopez Aguilar should have changed the testimony to talk about these other reasons based on mestizo. I don't I think that there that is not required for due process. And I'm running out of time, so I just want to switch really quickly to the motion to remand. This court doesn't have to find a due process violation in order to find that the board abused discretion to deny the motion to remand. Mr. Lopez Aguilar provided a legitimate and plausible explanation as to why the evidence that he presented on remand was not available. He wasn't aware of the mistranslation. He wasn't represented and didn't know what he had to prove. He was detained. And Oyunerin Beholder finds that a legitimate and plausible reason why evidence that may have existed in the world at the time of the hearing would not be reasonably available to the petitioner. And so on that ground, the court can find that the board abused its discretion in denying the motion to remand. Thank you, counsel. Thank both counsel for their briefing and arguments in this. And I thank Miss Rice for her pro bono efforts in the case. This case will be submitted.
judges: Hurwitz, Bress, Corker